UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| BILLY K SHIPLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:16-CV-00126-MCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| NANCY BERRYHILL, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant | | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with consent of the parties and by order of reference [Doc. 12] for disposition and entry of a final judgment. Plaintiff's application for Disability Insurance Benefits under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ("ALJ"). This is an action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff filed a Motion for Judgment on the Pleadings [Doc. 13] and Defendant filed a Motion for Summary Judgment [Doc. 15].

**I.     STANDARD OF REVIEW**

The scope of review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is defined as evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a

refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Lemaster v. Sec'y of Health & Humans Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). However, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Social Security Act to be eligible for benefits. Within the statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent the claimant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a)(1)(E).

The regulations require a five-step sequential evaluation process for disability determinations. 20 C.F.R. §§ 404.1520(a)(4). A dispositive finding at any step ends an ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). "The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)," while the Commissioner has the burden to establish the claimant's ability to work under step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II. RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A. Procedural History

This is Plainitff's Billy Shipley's ("Shipley's") third attempt at obtaining benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*[1] In this application, Shipley asserts he is disabled due to degenerative disc disease, diabetes mellitus, diabetic neuropathy, obesity, major depressive disorder, and generalized anxiety disorder (Doc. 8, Tr. 11) (reference to "Tr" and the page denote the administrative record). He was a person closely approaching advanced age under the regulations at the time of his March 2013 application, 20 C.F.R. § 404.1563, in which he alleged a disability onset date of August 24, 2011 (Tr. 27, 187). The onset date was amended to a later date, August 1, 2013, at the hearing in January 2015. (Tr. 35). Shipley's insured status expired on December 31, 2013. (Tr. 11). He must establish disability on or before that date to be entitled to benefits. 20 C.F.R. § 404.130.

Shipley's claims were initially denied on August 9, 2013, and again upon reconsideration on November 19, 2014. (Tr. 110, 114). An ALJ conducted a hearing on January 7, 2015 during which Plaintiff and a Vocational Expert ("VE") testified. (Tr. 34-60).

---

[1] Shipley applied for benefits without success in 2008 and 2010. (Tr. 43, 55). The 2008 ALJ found Shipley was not disabled in 2009. (Tr. 51). The 2010 ALJ found the same in 2011. (Tr. 64).

The ALJ conducted the five-step analysis in evaluating Shipley's claims. The ALJ's January 15, 2015, decision found Shipley had the severe impairments of degenerative disc disease, diabetes mellitus, diabetic neuropathy, obesity, major depressive disorder and generalized anxiety disorder. (Tr. 11). He also found Shipley had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[2] with certain limitations. Those limitations were that Shipley could perform and maintain concentration for simple, routine, repetitive tasks for two hour segments and has an ability to adapt to infrequent changes in a work setting, and that involve no public interaction and only occasional interaction with co-workers and supervisors. (Tr. 13). He found Shipley could not return to his past work and that transferability of job skills was not material under the Medical-Vocational Rules. (Tr. 18). He asked the vocational expert a hypothetical based on someone with Shipley's RFC whether there were jobs in the national economy. (Tr. 36-39). The VE identified a number of different jobs available in the national and regional economies. Accordingly, the ALJ found Shipley not disabled at any time from August 1, 2013, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)). The Appeals Council denied Plaintiff's review request, and Plaintiff appealed to this Court.

**B.     Evidence in the Record**

The ALJ decision includes a review of the underlying medical evidence. (Tr. 12-17). Shipley's motion summarizes the record evidence [Doc. 14, pp. 2-8] and the Commissioner's motion does likewise [Doc. 16, pp. 3-13]. The transcript contains records from three treating providers. Reference to the evidence herein, both medical and otherwise, is only set forth as necessary.

---

[2]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

**III.  ANALYSIS**

On appeal, the primary issue for review is whether the Commissioner's decision is supported by substantial evidence. In that regard, Shipley argues that the ALJ failed to properly weigh the medical opinions of the treating sources, Ronald S. Smith, M.D., and Thomas J. Burns, Ph.D. He also argues that the ALJ erred in the weight it gave the State agency non-examining medical consultant as required by SSR 96-6p. Next, he argues the ALJ failed to properly weigh the subjective allegations and his credibility and that substantial evidence did not support the ALJ's credibility determination. Finally, he claims the ALJ erred in his reliance upon the VE's testimony because the hypothetical question posed to the VE did not include all of Shipley's limitations.

**A.    The ALJ's analysis of the medical evidence**

Shipley saw Ronald Smith, M.D. beginning in April 2011 (Tr. 360-417). He saw Thomas J. Burns from July 2011 through June 2013 (Tr. 284, 286-301). There is no dispute that both Drs. Smith and Burns are Shipley's treating physicians. Shipley claims that the ALJ improperly evaluated both of their opinions in finding him not disabled. He claims that the ALJ did not follow the treating physician rule, the Commissioner's own regulations regarding the weight to give the opinion of a treating physician and failed to give good reasons for the weight he did ascribe to their opinions.

An ALJ must adhere to certain standards in assessing medical evidence supporting a claim for disability benefits. The "treating physician rule" requires the ALJ to give controlling weight to the opinions of treating physicians because:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.,* 378 F.3d, 541, 544 (quoting 20 C.F.R. § 404.1527(d)(2)[3]). The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)[4]). However, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." Soc. Sec. Rul. 96–2p, 1996 WL 374188 at *2 (July 2, 1996).

If the ALJ declines to give controlling weight to a treating opinion, the ALJ must still determine how much weight is appropriate by considering various factors, including the length of the treatment relationship and the frequency of exams, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *See Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c)(2). The regulations require the Commissioner to "always give good reasons in [the] notice of determination or decision for the weight" afforded to the opinion of the claimant's treating sources. 20 C.F.R. § 404.1527(c)(2). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188 at *5 (July 2, 1996).

There are dual purposes behind this procedural requirement:

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially

---

[3] Now at 20 C.F.R. § 404.1527(c)(2).
[4] Now at 20 C.F.R. § 404.1527(c)(2).

bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."

*Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999). The requirement further ensures that meaningful review of the ALJ's determination can occur. *Wilson,* 378 F.3d at 544. It also exists to "ensur[e] that each denied claimant receives fair process," and thus "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinion *denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added).

In contrast, opinions from consulting medical sources are not assessed for controlling weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner "weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if the treating-source opinion is not deemed controlling. *Id.* at 376. (citing 20 C.F.R. § 404.1527(c)).

Regardless of the type of medical opinion assessed, other factors "which tend to support or contradict the opinion" may be considered. *Gayheart,* 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(6)).

**1.      Physical Conditions**

Regarding Shipley's physical limitations, Dr. Purswani opined that Shipley could lift 30 pounds frequently one-half of the time in an eight hour work day from the floor; could stand for six hours per day and walk with breaks for six hours per day, for a total of six hours in an eight hour day; and could sit for eight hours in an eight hour day  (Tr. 326).  The ALJ relied upon the opinion of Dr. Purswani, in conjunction with the medical records and plaintiff's subjective complaints, in finding that Shipley could engage in light work with certain limitations.  Shipley

7

points to nothing in the record that would suggest the ALJ erred in this regard. The Court finds substantial evidence exists to support the findings as to physical impairment.

 **2.     Mental Conditions**

Shipley's primary argument focuses on the ALJ's analysis of the opinions of Shipley's treating physicians. Shipley urges that the ALJ erred in failing to give controlling weight to the treating opinions of Dr. Thomas Burns, a psychologist, and Dr. Ronald Smith, a psychiatrist. The ALJ gave "little weight" to Dr. Smith's opinion and "some weight" to Dr. Burns' opinion.

When an ALJ does not accord controlling weight to the opinion of a treating source, the ALJ is to determine what weight to ascribe to that opinion based upon the factors set forth in 20 C.F.R. § 404.1527. Here, the ALJ noted ongoing treatment history with both mental health providers began in July 2011 and identified the providers' qualifications as required. (Tr. 14). The ALJ considered the history and frequency of treatment with each provider. These factors were not determinative and did not weigh against giving controlling weight. Rather, the consistency of the treating opinions with the record as a whole and other factors, specifically information that tends to contradict the opinions, provided the primary grounds for the ALJ not giving those opinions controlling weight. This is apparent from the ALJ's case history summary:

> The claimant also has a history of mental health issues. He has received treatment from his therapist, Thomas Burns, Ph.D. and Dr. Ronald Smith, Psychiatric Associates, since July 2011, with working diagnosis of Major Depressive Disorder, moderate, recurrent. In August 2011, the claimant reported increased depression and anxiety due to his mother's death. While mental status examinations through May 2013 revealed depressed/anxious mood, occasional blunted affect, and impair judgment, the claimant was alert and oriented in all spheres, had intact memory, had normal thought content/process, and denied suicidal/homicidal ideation. His symptoms were mainly due to grief reaction to his mother's death. In May 2013, the claimant reported that he did not want to socialize, and in August 2013, after being denied disability, reported that he was doing no housework or yard work, and was not interest in personal care/hygiene. He was maintained on medications with appropriate changes throughout the treatment period.

(Tr. 14-15).

Dr. Burns' records reveal that Shipley's mother was ill in July 2011 and he expected she would soon pass away. (Tr. 245). He was understandably tearful in his July session. (*Id.*) Shipley's mother died on August 23, 2011. (Tr. 409). (Plaintiff called Dr. Smith's office the next day, August 24, 2011, to advise of his mother's death and he later alleged the disability onset as this date.) Shipley's records thereafter reflect recurring discussion with Dr. Burns about grief over the recent deaths of both parents. (Tr. 284, 286, 289, 290, 291-93, 295-96, 300). Dr. Burns' records focus on Shipley's grief reaction beginning in the summer of 2011. (Tr. 245.) He last noted continuing grief reaction in April 2013. (Tr. 329). Limited comment was made as to other mental health issues through this period.

Dr. Burns' records also indicate that Plaintiff was active during this time period and not confined to his home as he reported to others, including in testimony before the ALJ. In fact, Shipley reported routinely visiting the cemetery, ostensibly to visit his parents' graves, on a daily basis at various points in 2011 and 2012 (Tr. 294-95) and was still routinely visiting the cemetery in April 2013. (Tr. 284). He also reported he purchased a home and moved in June 2012. (Tr. 291).

Shipley argues that Dr. Smith and Dr. Burns are consistent with each other, but in a closer analysis Dr. Smith's records contrast with Dr. Burns' records. Dr. Smith makes limited reference to Shipley experiencing significant, ongoing grief over the loss of his parents and, particularly, his mother. Rather, he notes that Shipley presents as very anxious and depressed and, at times, hears voices (something not reflected in Dr. Burns' notes). Shipley also routinely completed a patient questionnaire that asked about nine (9) different issues, such as having little interest in doing things and having trouble concentrating, for the two-week period prior to completion of the questionnaire.

9

The record contains 39 of these questionnaires in which he marked "nearly every day" (the worst status possible) for each category except one relating to his sleep and indicated that these problems make it "extremely difficult" (also the worst status) to work, take care of things at home, or get along with others. (Tr. 304-13, 375-417, 462-88). Shipley's subjective questionnaire responses never changed except for his reports about his ability to sleep.

Dr. Smith's records vary from Dr. Burns' with regard to activities and behavior Shipley reported to him. For example, on November 7, 2011, Shipley reported to Dr. Smith, "I don't get out" and that he "walk[s] the floors." (Tr. 401) Two weeks later, Shipley told Dr. Burns that he goes to the cemetery "almost daily." (Tr. 296). Shipley also reported to Dr. Smith, among other things, that he sat at home in the dark in February 2013 (Tr. 310), that he did not want to "get out of the house" in March 2013 (Tr. 308) or to socialize in May 2013 (Tr. 303).[5] On June 5, 2012, he reported to Dr. Smith that he seldom watches television and does not read (Tr. 387) and again filled out a patient questionnaire as discussed above. (Tr. 388). A week later Shipley told Dr. Burns he had purchased a house and was moving as noted above. (Tr. 291).[6]

The records of Drs. Smith and Burns seem to depict two different people. One is primarily grieving over the loss of his parents but remains able to visit the cemetery, to buy a home, and

---

[5] Shipley also wrote in his May 2013 Function report that he goes to the pharmacy while also denying going other places on a regular basis. (Tr. 213.)

[6] Shipley's Global Assessment of Functioning scores ("GAF") give insight on Shipley's status as viewed by both providers. Both providers routinely noted the scores. The lowest GAF listed by Burns was in the second half of 2011 when Shipley was anticipating the death of his mother and in the months following. The scores ranged from 55 to 60. By early 2012 and continuing into 2013, the score increased and remained at 65. The elevated score coincides with the resolution of the grief reaction and home purchase. In contrast, Dr. Smith assigned scores for Shipley with 60 being the highest in October 2012. Otherwise, Dr. Smith consistently assessed at 50 to 55 in late 2013 and 2014. The score dropped to 45 in August 2013 after Shipley reported he was "all to pieces" over his Social Security disability denial. (Tr. 245, 284-01, 328-45, 419.)

move. The other purports to be in such distress that he is incapable of leaving the home, has no desire to care for himself, and does little or nothing at home. When compared with the records of Shipley's internist, Dr. Brian Shafer, in 2012 to late 2014, a third person emerges who routinely presents as oriented to person, place and time with normal affect and mood and intact judgment and insight. (Tr. 254, 266, 275, 279, 426, 442, 446, 450). As noted by the ALJ, these inconsistencies support his decision not to give their opinion as treating sources controlling weight.

The record contains specific examples of the distinction in person presented to the primary care physician versus the mental health providers. For example, Shipley claimed to Dr. Smith that he was nervous and heard voices at his March 11, 2014 appointment and filled out the patient questionnaire as he had in the past. (Tr. 473). On this date, Dr. Smith assigned a GAF of 45-50 and noted that Shipley's thought content included delusions, his affect was "labile," and he was anxious and depressed. (Tr. 472). Shipley then attended an appointment at Dr. Shafer's office in late March 2014 and reported nervousness but that he was otherwise doing well. (Tr. 448). Shipley did not mention hearing voices and Dr. Shafer noted Shipley's insight and judgment were intact and affect and mood normal. (Tr. 450).

In addition to the inconsistency in how Shipley presented himself at appointments and what information he reported to his providers, there is inconsistency in the disability opinions submitted by Drs. Smith and Burns. The contrast in descriptions of Shipley is marked. Dr. Burns' June 2013 opinion reflects that Shipley was diagnosed with major depressive disorder that is moderate and recurrent. He indicated Shipley had moderate impairment in memory, concentration and social ability, was not expressing suicidal thoughts, could maintain socially appropriate behavior, hygiene and grooming, could care for himself and maintain independence in daily living on a sustained basis, and could manage his own funds. The assessment that Shipley can perform a

11

variety of non-work activities and handle his activities of daily living are consistent with the record as a whole. Despite opining Shipley has the capacity to handle these various personal tasks and categorizing him as having a moderate impairment, Dr. Burns concluded that Shipley cannot handle simple, "1-2 step" instructions, maintain a work routine without frequent breaks for stress related reasons, and cannot respond to normal stress and routine change. (Tr. 321).

Dr. Smith's October 2014 opinion was that Shipley has major depression accompanied by hallucinations and occasional suicidal ideations and that he appeared depressed, anxious, and disheveled. (Tr. 532). Medications had not resulted in an adequate response. (Tr. 533). Dr. Smith concluded that Shipley cannot function in employment or at a reasonable pace and would have great difficulty making modest decisions and carrying out assigned tasks. (*Id*.). Dr. Smith's discussion of Shipley's status is inconsistent with Dr. Burns' discussion, and the providers seem to have been discussing two different people.

Dr. Smith's opinion is also inconsistent with his own functional assessment completed for Metlife.[7] (Tr. 493). This April 2014 assessment focused on matters applicable to the specific job of lubricator that Shipley previously held. Dr. Smith marked that Shipley had a "moderate" ability to "perform intellectually complex tasks requiring higher levels of reasoning, quantitative or language skills." (Tr. 493). He opined that Shipley had a moderate ability to perform activities of daily living, comprehend and follow instructions, perform simple and repetitive tasks, and respond appropriately to supervision. He assessed moderately severe or severe ability in other areas, such as maintaining safety, controlling emotions, handling goals, accepting responsibility for supervision, and interacting with customers. (*Id*.)

---

[7] This was apparently completed for a private disability insurance policy as it lists Shipley's recent employer, Eastman, and his job description.

Based upon the foregoing, including the inconsistencies in both mental health providers opinions and the records of Drs. Burns, Smith and Shafer, the Court finds substantial evidence exists to support the ALJ's decision not to give controlling weight to the opinions of Dr. Burns and Dr. Smith and are "good reasons" for the weight the ALJ ascribed to them. Furthermore, their opinion that Shipley cannot work is not theirs to make. While "[a] doctor's conclusion that a patient is disabled from all work may be considered," it is not "given special significance because it may invade the ultimate disability issue reserved to the Commissioner." *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 248 (6th Cir. 2016)(quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723–24 (6th Cir. 2014)).

Shipley also contends that the ALJ erred in the weight it gave to the State Agency psychological consultants by not giving a sufficient explanation for assigning significant weight to the non-examining source. The Court disagrees. The ALJ actually gave only "some weight" to the State agency psychological consultants. He noted:

> The undersigned gives some weight to the opinions of the State agency psychological consultants; however, a further review of the evidence, including the claimant's subjective complaints, finds the claimant more limited.

(Tr. 17). The Court finds substantial evidence supports the ALJ decision to give "some weight" to the State agency psychological consultants. (Tr. 17). The Court observes that despite writing that "some weight" was afforded, the ALJ did not place significant reliance upon their analysis and instead found Shipley was *more limited* than they had opined. (Tr. 17). That conclusion was based on consideration of Shipley's subjective complaints and a review of his medical history.

Shipley's last argument relative to the medical evidence is that the ALJ erred by not sending him to a consulting specialist for an exam and opinion. However, the "regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority

13

to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. § 416.917(a)). Further, "'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Id.* (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original); *see also Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 263 (6th Cir. 2015). Based upon the foregoing, the Court finds the record was sufficiently developed for the ALJ to make a determination as to disability without the need for a consultative exam and opinion.

The Court finds that for these reasons, the ALJ properly weighed the opinions of Drs. Smith and Burns, that he followed SSR 96-2p in finding that their opinions were not entitled to controlling weight given the inconsistencies discussed herein, and that he otherwise gave good reasons for the little weight he assigned to them. Substantial evidence supports his treatment of their opinions.

**B.     Credibility Determination**

Shipley next argues that the ALJ failed to properly weigh his subjective allegations because substantial evidence did not support the ALJ's credibility determination. The Sixth Circuit has long held that a claimant's credibility may be considered. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). "An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). An ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997). The assessment of credibility must be supported by substantial evidence. *Id.*

The ALJ made a detailed discussion of credibility. (Tr. 17). The ALJ recognized that Shipley has limitations due to depression and anxiety and that he has medically determinable impairments. (Tr. 17). However, the ALJ determined that the record fails to indicate the existence of one or more impairments of a severity as to preclude all work activity. In so doing, the ALJ found that the alleged severity of symptoms is not completely consistent with the progress notes in his medical files. Instead, the ALJ determined that Shipley's statements regarding mental related limitations are not credible to the extent alleged. The ALJ, instead, found Shipley had only moderate limitations.

The ALJ identified multiple examples from the record that undermine Shipley's credibility as to the severity of his conditions. The first examples included Shipley's behavior in response to his denial of benefits in 2013. Plaintiff claimed he was "all to pieces" after being denied disability benefits in August 2013.[8] (Tr. 17, 86, 359). The ALJ felt Shipley "told his treating physician that he was not bathing, not doing his housework, and was doing no yard work, apparently in an attempt to convince his doctor that he was indeed disabled." (Tr. 17). Skepticism about Shipley's behavior with his doctor is supported by other parts of the record. In both the 2009 and 2011 decisions, each prior ALJ found that Shipley was able to do a variety of daily activities, interact with friends and family and handle his personal needs. (Tr. 47, 62). Each cited this information as evidence of diminished credibility and magnifying or exaggerating symptoms. (*Id.*). As of August 2013,

---

[8] Shipley's counsel advised the ALJ that the disability onset date should be in August 2013 as he felt the records reflected worsening in Shipley's status at that time. As is obvious, this purported worsening is contemporaneous with Shipley's denial of disability benefits and statement to his physician that he was "all to pieces" as a result.

Shipley was consistently reporting symptoms and limitations that are the converse of the activities and behaviors he stated he could perform in his prior disability claims and that were ultimately cited as grounds for denying him benefits. (*Id.*) .

The ALJ further felt that Dr. Smith's observations of Shipley at the time he stated he was "all to pieces" were important. Although Dr. Smith's records reflected that Shipley's judgment was impaired during the visit, Dr. Smith also recorded that Shipley's thought content was unremarkable, his sensorium and memory intact, and he did not endorse suicidal ideation. (Tr. 17). The ALJ noted that records after this August 2013 visit reflect Shipley had intact judgment and normal affect, but did not specify which records reflect this. If this is error, the Court finds it harmless as Shipley's primary care physician, Dr. Shafer, consistently noted in the psychiatric portion of his exams that Shipley was oriented to person, place and time and his judgment, affect and/or mood were normal after August 2013.[9] (Tr. 442, 446, 450, 458).

Lastly, the ALJ found a lack of credibility relative to mental health symptoms and status because Shipley claimed "limited contact with others due to staying home by himself" while, in contrast, advising he had a friend stay with him when the friend was not working. (Tr. 17). He also thanked God for his aunt and others who watched out for him. (Tr. 17). The ALJ further noted that if Plaintiff were in the state he described due to his mental condition, "one would expect him to be in the hospital." (Tr. 17). The ALJ's remark is apt.

The Court gives deference to the ALJ's credibility determination and finds that substantial evidence exists to support the same. The Court finds no error in treatment of the subjective allegations. Furthermore, the determination of partial credibility is sound given the content of the

---

[9] The primary care physician's notes in the record dating from early 2012 consistently reflect normal mood, affect, and/or judgment prior to August 2013. (Tr. 248-82, 422-35).

16

record and the Court's ability to consider any evidence in the record regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001).

The Court has also reviewed the record and observes that the record contains further confirmation of the ALJ's credibility determination. Shipley testified: "I just stay secluded in the house all the time" and "I just can't stand to get out of the house." (Tr. 31-32). He also asserts he cannot go out to places such as Walmart because he is "so nervous" and "[a]nytime I'm around anybody, it just really makes me tore up [sic]." (Tr. 33).

These assertions are belied by Shipley's treatment records. Shipley was capable of attending ongoing visits to his mental health providers and family practice physician from August 2011 through fall 2014.[10] Shipley visited the cemetery almost daily in November and December 2011. (Tr. 295-96). He was able to purchase a house and plan to move in June 2012. (Tr. 291). Nearly a year later, Shipley continued to "routinely [go] to the cemetery." (Tr. 284).

While the Court does not fault Shipley's devotion to his deceased parents or purchasing a home or moving, he never revealed these activities to the Social Security Administration or in his sworn testimony before the ALJ. Instead, he indicated he is homebound, wholly inactive – basically an invalid. The Court cannot fault the ALJ in not crediting his testimony.

The Court also notes a lack of credibility in Shipley's pursuit of disability benefits. Shipley initiated the pending disability application in March 2013 and cited an onset date of August 24, 2011. (Tr. 186). His treatment records consistently reflect Shipley was grieving for the loss of his mother beginning with her death in August 2011 and his father a few years prior. Shipley's grief is understandable, but it does not form basis for an award of disability, particularly since the grief

---

[10] There were approximately seventy (70) appointments during this period.

reaction appeared to have resolved by April 2013 when Dr. Burns last noted it as an issue. (Tr. 284).

The amended disability onset date in August 2013 is also troubling. This date is contemporaneous with a disability denial and Shipley professing he was "all to pieces" over the denial. In essence, he claims that he is now disabled because of his reaction to the Commissioner's decision finding him not disabled. After receiving that adverse ruling, the medical records reflect a marked change from his daily routine and behavior that the ALJs in both prior cases relied upon as demonstrating inconsistency with Shipley's subjective symptoms and upon which they relied in finding him not credible and, more importantly, not disabled. The ALJ notes that Shipley reported different activities and behaviors in 2013 in a manner that indicates a total inability to function and which appeared intended to convince the doctor of his inability to engage in substantial gainful activity.[11] This suggests that Shipley is pursuing benefits for an exacerbation of a mental condition allegedly resulting from a denial of disability benefits for the same mental condition(s). A claim of disability (or the appearance of one) based upon a denial of disability benefits coupled with symptoms the ALJ certainly viewed as contrived further erodes Shipley's credibility.[12] The Court finds that substantial evidence exists in the record to support the ALJ's determination as to credibility.

---

[11] Notably, the treatment records do not reflect that Shipley's conditions necessitated emergent care, including emergency sessions with either mental health provider, or hospitalization during the period beginning with the original alleged disability onset date through the date of the ALJ's hearing.

[12] The Court will not venture onto the slippery slope of opining whether an outcome in a disability case can create or exacerbate a condition in a manner that then qualifies the person for benefits as there is substantial evidence to support the ALJ's decision otherwise.

18

## C. The ALJ's hypothetical to the Vocational Expert

The VE described Shipley's work history and identified the exertional level for those positions. (Tr. 36-37). The ALJ asked if a hypothetical person in Shipley's position would be prevented from doing all of his past work if he could only perform and maintain concentration and persistence for simple, routine, and repetitive tasks for a two-hour segment, could adapt to infrequent changes in the work setting, and would be limited to work not requiring public interaction or more than occasional interaction with coworkers and supervisors. (Tr. 37). The VE confirmed such a person could not return to his past work under these parameters. (Tr. 37).

The ALJ next inquired whether other occupations would be available to a person of Shipley's age, education and experience who was restricted as noted. (Tr. 37). The VE testified that occupations such as housekeeping, power screwdriver operator and production assembly jobs were available in the national and state economies. (Tr. 37-38). The ALJ also posed a hypothetical question, based on Dr. Smith's opinion about Shipley's limitations, about work available to a person capable of light work but limited by a "substantial loss in his ability to perform at least one of the basic mental demands of unskilled work activity." (Tr. 38). The VE opined that such a person would be unable to engage in competitive employment for any type of work. (Tr. 38-39).

Plaintiff alleges the ALJ erred by posing a hypothetical question to the VE that did not include *all* of Plaintiff's mental or physical impairments. An ALJ is not required to incorporate "all" limitations in a hypothetical question. Rather, "[i]t is well established than an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Winslow v. Comm'r of Soc. Sec.,* 566 F. App'x 418, 421 (6th Cir. 2014). Further, "[a] vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the

19

testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).

Here, the ALJ's first hypothetical question clearly incorporates the limitations or restrictions the ALJ deemed credible, as discussed *supra*, and which resulted in the ALJ utilizing light work with specific limitations as opposed to medium work set in Plaintiff's prior social security cases in 2009 and 2011. (Tr. 48, 160). Shipley urges that the ALJ erred because he did not rely upon Dr. Kirsh Purswani's consulting medical opinion as to Shipley's capacity to stand or walk with breaks for six hours in an eight (8) hour day. But the hypothetical presented asked the VE to opine about Shipley's ability to perform work in which he was limited to "simple, routine, repetitive tasks for two hour segments." The VE responded with occupations that fit such parameters. (Tr. 37). That argument is without merit.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for judgment on the pleadings [Doc. 13] is DENIED and the Commissioner's motion for summary judgment [Doc. 15] is GRANTED for the reasons stated herein.

SO ORDERED:

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE